UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEYONTE ASHFORD, SR.,

      Plaintiff,                                    Case No. 18-10813

v.                                                        HON. GEORGE CARAM STEEH

MICHAEL RABY,

      Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 14)

Before the court is Defendant's motion for summary judgment, which

has been fully briefed. The court heard oral argument on May 21, 2019,

and took the matter under advisement.  For the reasons explained below,

Defendant's motion is granted.

## BACKGROUND FACTS

Plaintiff Keyonte Ashford, Sr., contends that Southfield Police Officer

Michael Raby used excessive force by ordering his police dog to

apprehend him.  On January 24, 2016, at about 1 a.m., Southfield Officer

Jordan Woodside was driving north on Northwestern Highway when a

white sport utility vehicle sped past him.  Plaintiff was the driver of the SUV.

Woodside was traveling at about 70 miles per hour in a marked police car.

He observed that the SUV's speed was in excess of 100 miles per hour, and that the driver changed lanes without signaling, straddled between lanes, and swerved. After Woodside activated his overhead lights, the vehicle slowed, but did not stop. Woodside then activated his siren. The SUV continued northbound on Northwestern Highway, traveling at about 60 miles per hour. The SUV traveled in the right lane, then moved into the Telegraph Road exit lane before abruptly continuing on Northwestern. After a few minutes, three Southfield police vehicles were eventually able to box in the SUV and it came to a stop at a traffic light in the left center lane.

Officer Raby arrived on the scene after the SUV was boxed in. Raby is a trained K9 handler who was riding with his police dog, Ruger. Also on the scene was Officer Maurer, who positioned his vehicle behind the driver's side door and whose dash camera recorded video of the incident. *See* Doc. 14-5.

After being ordered to put his hands up, Plaintiff showed his hands slightly outside the open window of the SUV. With his gun drawn, Maurer again told Plaintiff to put his hands up, and Plaintiff raised his hands further outside of the window. Maurer told Plaintiff to turn off the car; but Plaintiff kept his hands visible outside of the window.

As Raby approached the driver's side of the SUV with Ruger, he had the dog lie down. Raby also drew his weapon and pointed it at Plaintiff. Maurer told Plaintiff not to move or he would be bitten by the dog, and then told him to keep his hands outside of the window. Raby approached the door and attempted to open it, but it was locked. Raby and Maurer ordered Plaintiff to open the door, but he shook his head, keeping his hands up. Raby reached into the vehicle, unlocked the door, and opened it. He noticed that the SUV was running and was still in drive. Raby backed away from the door and he and Maurer ordered Plaintiff out of the vehicle. Maurer yelled at Plaintiff several times to come out with his hands on his head. Plaintiff kept his hands in the air, and shook his head. See Doc. 14-7 ("[H]e shook his head no."). He did not exit the vehicle. He appeared to be speaking to the officers, but his words are not audible on the video above the yelling of the officers and the barking of Ruger.

Plaintiff contends that he was explaining to the officers that he could not get out of the car because his foot was on the brake and the car was in drive. Plaintiff testified that he was afraid that if he moved his hands to put the vehicle in park, the officers would shoot him. He was also afraid that if he removed his foot from the brake, the car would move and he would be accused of using his car as a weapon and shot.

- 3 -

Raby warned Plaintiff that if he did not exit the vehicle, he would be bitten by the dog. When Plaintiff did not comply, Raby commanded Ruger to apprehend Plaintiff. Ruger jumped up and attempted to bite Plaintiff, but missed because Plaintiff moved his arm into the SUV. Raby commanded Ruger again, but the dog missed a second time. Raby then grabbed Plaintiff's left arm and pushed it down; Ruger latched on and pulled as Raby also pulled Plaintiff out of the SUV and onto the ground. As Plaintiff was pulled out of the car, the vehicle lurched forward slightly and hit the police car directly in front of it.

Three officers then attempted to gain control of Plaintiff, who did not comply with multiple commands to roll over. According to the officers, Plaintiff pulled his arms away to the center of his body, resisting their efforts to handcuff him. Once officers had control of Plaintiff's arms, Raby commanded Ruger to release Plaintiff, and the dog obeyed. Plaintiff contends that Ruger was allowed to bite him unnecessarily for ten additional seconds after he was removed from his vehicle.

Plaintiff was arrested and transported to the hospital. He was treated for puncture wounds on his arm and consented to a blood draw. Plaintiff's blood alcohol level at the time of his arrest was .184, well over the legal limit in Michigan of .08. Plaintiff was charged with fleeing/eluding police,

resisting and obstructing, and operating a vehicle while intoxicated.

Plaintiff pleaded no contest to fleeing/eluding and operating while

intoxicated; the resisting/obstructing charge was dismissed. Plaintiff filed

this action on March 12, 2018, alleging that Raby violated 42 U.S.C. § 1983

and the Fourth Amendment by subjecting Plaintiff to excessive force in the

course of his arrest. He alleges that he continues to have residual pain and

numbness in his arm and that he receives psychiatric treatment as a result

of the emotional trauma of the incident.

LAW AND ANALYSIS

Raby has moved for summary judgment, arguing that he is entitled to

qualified immunity, which "protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have

known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).

"Qualified immunity balances two important interests – the need to hold

public officials accountable when they exercise power irresponsibly and the

need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably." *Id.*

In determining whether a government official is entitled to qualified

immunity, the court inquires as follows: "Taken in the light most favorable to

the party asserting the injury, do the facts alleged show the officer's

conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201

(2001). "[I]f a violation could be made out on a favorable view of the

parties' submissions, the next . . . step is to ask whether the right was

clearly established. . . . The relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he

confronted." *Id.* at 201-202. It is within the court's discretion to determine

which prong of this analysis to address first, depending upon the

circumstances of the case. *Pearson*, 555 U.S. at 236.

I.     Constitutional Violation

The court will first consider whether Plaintiff has alleged sufficient

facts demonstrating a constitutional violation. Plaintiff alleges that Officer

Raby's use of Ruger to apprehend him amounted to excessive force in

violation of the Fourth Amendment. The Fourth Amendment guarantees

individuals the right to be free from unreasonable seizures, including the

use of excessive force. U.S. Const. Amend. IV; *Thomas v. City of*

*Columbus*, 854 F.3d 361, 365 (6th Cir. 2017). A standard of "objective

reasonableness" governs whether an officer has used excessive force.

*Thomas*, 854 F.3d at 365 (citing *Graham v. Connor*, 490 U.S. 386, 388

(1989)).  "The 'reasonableness' of a particular use of force must be judged

from the perspective of a reasonable officer on the scene, rather than with

the 20/20 vision of hindsight. . . . The calculus of reasonableness must

embody allowance for the fact that police officers are often forced to make

split-second judgments – in circumstances that are tense, uncertain, and

rapidly evolving – about the amount of force that is necessary in a

particular situation." *Graham*, 490 U.S. at 396–97.  In considering whether

an officer has acted reasonably, the court analyzes the totality of the

circumstances, "including the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Id.* at 396.

In this case, Plaintiff was driving in excess of 100 miles per hour and

then evaded Officer Woodside's signals to pull over, only bringing his

vehicle to a stop after it was boxed in by three patrol cars.  When stopped,

Plaintiff did not put his car in park, turn off the engine, or open the door as

instructed by the officers.[1]  Although he kept his hands in the air, he did not

follow the officers' orders to exit the vehicle.  Officer Raby testified that it

---

[1] Although Plaintiff characterizes these orders as "contradictory," the video shows that
the officers' commands were objectively neither contradictory nor confusing.

appeared that Plaintiff's "state of mind was, that he was not going to willingly come out of the vehicle." Doc. 14-7 at 40. Under similar circumstances, the Sixth Circuit found the officers to be reasonably apprehensive that the driver may have a weapon or use the vehicle as a weapon, which was also Raby's concern. *See Dunn v. Matatall*, 549 F.3d 348, 354-55 (6th Cir. 2008). In *Dunn*, the court held that "given the heightened suspicion and danger brought about by the car chase and the fact that an officer could not know what other dangers may have been in the car, forcibly removing [the plaintiff] from the car to contain those potential threats was objectively reasonable." *Id.* at 355. Here, too, in light of all the circumstances, it was objectively reasonable for officers to forcibly remove Plaintiff from his vehicle. *See also Ryan v. Hazel Park*, 279 Fed. Appx. 335, 338-39 (6th Cir. 2008) (reasonable for officers to forcibly remove plaintiff from vehicle when she led them on a chase, refused to follow officers' directions, and resisted efforts to remove her from vehicle).

Plaintiff specifically takes issue with Raby's use of Ruger to bite him and pull him from the vehicle. Raby testified that, because the vehicle was running and Plaintiff was refusing to exit, he believed it was dangerous for an officer to attempt to physically remove Plaintiff from the car. Doc. 14-7 at 40. *See generally Foos v. City of Delaware*, 492 Fed. Appx. 582, 584

(6th Cir. 2012) ("There are only so many ways that a person can be extracted from a vehicle against [his] will, and none of them is pretty. Fists, batons, choke holds, dogs, tear gas, and chemical spray all carry their own risks to suspects and officers alike.") (citation omitted).

The Sixth Circuit has issued several decisions regarding the use of canines to apprehend suspects. The court has held that officers cannot use "an inadequately trained canine, without warning, to apprehend two suspects who were not fleeing." *Campbell v. City of Springboro,* 700 F.3d 779, 789 (6th Cir. 2012). On the other end of the spectrum, the court has also held that it was reasonable for officers to use a properly trained dog to apprehend a suspect who was hiding in a darkened, unfamiliar area, and who was warned that the dog would be released unless he surrendered. *Robinette v. Barnes*, 854 F.2d 909, 913-14 (6th Cir. 1988); *Matthews v. Jones*, 35 F.3d 1046, 1051 (6th Cir. 1994).

Here, although Plaintiff claims that he had "surrendered," the video makes clear that he made no attempt to exit the vehicle despite multiple orders to do so. The fact that Plaintiff held his hands in the air, while resisting all other instructions from the officers, would not necessarily lead a reasonable officer to believe that Plaintiff had surrendered and posed no further threat. *See Baxter v. Bracey*, 751 Fed. Appx. 869, 872-73 (6th Cir.

2018) (suspect with hands raised after fleeing and hiding from police in an unfamiliar location nonetheless posed an "unknown safety risk"). Indeed, Plaintiff's vehicle remained running and in gear; the officers were aware of the risk that Plaintiff could move his foot to the gas, accelerate, and thus drag or otherwise pose a danger to an officer trying to remove him from the car. Plaintiff was warned several times that if he did not exit the vehicle, the dog would be sent in and he would be bitten. Viewing the totality of the circumstances, it was not unreasonable for Raby to conclude that Plaintiff posed a threat and that the use of Ruger to apprehend him was an appropriate use of force.[2]

Plaintiff's claim that he explained to officers that he was unable to exit the car because his foot was on the brake does not change the analysis. Under the circumstances, in which Plaintiff had led police on a car chase and had driven erratically, had his car running and in gear, and officers were unable to see whether Plaintiff had a weapon, it was reasonable for officers to determine that Plaintiff's reasons for not wanting to exit should not necessarily be given credence, or that the urgency of the situation precluded deliberation. The officers reasonably perceived Plaintiff to be resistant, and were reasonable in proceeding accordingly. Whether

---

[2] Plaintiff does not allege that Ruger was not properly trained.

Plaintiff had a good reason for failing to exit is not relevant to the analysis,

which is viewed from the officer's perspective, not Plaintiff's. *See Ryan*,

279 Fed. Appx. at 338 ("Thus, even if the force used was unreasonable

from Ryan's perspective because she was not in full control of her actions

at the time, we do not judge the use of force from her perspective.");

*Blosser v. Gilbert*, 422 Fed. Appx. 453, 458 (6th Cir. 2011) (even though

resistance in pulling driver from truck was caused by steering wheel,

officers could reasonably have perceived the resistance as purposeful,

"necessitating a higher level of force"); *Estate of Brackens v. Louisville*

*Jefferson Cty. Metro Gov't*, 680 Fed. Appx. 362, 366-67 (6th Cir. 2017)

("[T]he few seconds that elapsed between the order and Brackens's

removal [from the vehicle] gave [the officers] little opportunity to appreciate

fully that Brackens was disabled and unarmed.").

Plaintiff further argues that Raby gratuitously allowed Ruger to

continue biting him after he had been pulled from the vehicle. Once Ruger

bit Plaintiff, the dog held on until Raby gave him the order to let go. The

video shows that Raby commanded Ruger to release Plaintiff within a few

seconds of pulling Plaintiff from the vehicle. *See* Doc. 14-5. Under the

circumstances, it does not objectively appear that Raby allowed Ruger to

bite Plaintiff longer than necessary to ensure that the situation was under

control.  Raby's use of Ruger to pull Plaintiff from the vehicle and briefly

hold him until Raby was sure the officers had the situation in hand was a

reasonable use of force.

II.    Clearly Established Law

Further, Raby's use of force to extract Plaintiff from his vehicle was

not in violation of clearly established law. The "clearly established" prong is

an exacting standard; the plaintiff must show that "every reasonable official

would understand that what he is doing is unlawful." *District of Columbia v.*

*Wesby*, __ U.S. __, 138 S.Ct. 577, 589 (2018).  "It is not enough that the

rule is suggested by then-existing precedent," rather, it must be "settled

law" and "beyond debate." *Id.* at 589-90.   The Supreme Court has

"repeatedly stressed that courts must not 'define clearly established law at

a high level of generality, since doing so avoids the crucial question

whether the official acted reasonably in the particular circumstances that he

or she faced.'" *Id.*  (citation omitted).  These principles ensure that qualified

immunity protects "all but the plainly incompetent or those who knowingly

violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiff cites no legal authority indicating that an officer in Raby's

position should have understood that the use of a canine to apprehend

Plaintiff would be unlawful under the circumstances.  Indeed, the cases

cited above suggest that this use of force was reasonable. *See, e.g.,*

*Baxter*, 751 Fed. Appx. at 872 (no clearly established law stating that an

officer could not use canine to apprehend suspect hiding in an unfamiliar

location, after fleeing from police, and who posed an unknown safety risk);

*Blosser*, 422 Fed. Appx. at 459 (officers "could not have had fair notice"

that forcibly removing driver through open car window was unlawful).

## CONCLUSION

For these reasons, the court finds that Defendant Raby is entitled to

qualified immunity.  IT IS HEREBY ORDERED that Defendant's motion for

summary judgment (Doc. 14) is GRANTED.

 Dated:  May 23, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 23, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---